Edwin FOSTER, et al.,
Plaintiffs-Appellees,
Cross-Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA, et al., Defendants-Appellants, Cross-Appellees.

No. 86–7064.

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1987.

Sintz, Campbell, Duke, Taylor & Cunningham, Thomas R. McAlpine, Mobile, Ala., for defendants-appellants, cross-appellees.

Blacksher, Menefee & Stein, P.A., Gregory B. Stein, Mobile, Ala., for plaintiffs-appellees, cross-appellants.

Before FAY and JOHNSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

In this appeal, we review the order of the United States District Court for the Southern District of Alabama awarding attorney's fees to the plaintiffs as prevailing parties under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 and the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). During Stage I of this bifurcated class action, the plaintiffs established class-wide discrimination and were awarded attorney's fees for their successful efforts. The class members pursued individual claims for relief in Stage II of the suit. Since less than one-third of the class members obtained a favorable adjudication in Stage II, the district court, in calculating a reasonable attorney's fees award, applied a reduction of approximately 12% to reflect the plaintiffs' limited success. Finding that the district court did not abuse its discretion, we affirm the award of attorney's fees.

The long and complicated procedural history of this litigation began when Edwin Foster and James E. Buskey intervened in the famous *Birdie Mae Davis*[1] school case asserting discrimination under 42 U.S.C. §§ 1981 and 1983, as well as Title VII of the Civil Rights Act of 1964. The plaintiffs challenged the Mobile County School Board's practice of refusing to appoint black principals to predominately white schools alleging that this intentionally discriminatory practice resulted in a disproportionately small number of principalships for blacks. Initially, the district court denied the class status sought by the plaintiffs but fashioned general injunctive relief designed to eliminate the discriminatory assignment practice of the school board. On appeal, the second involving Foster and Buskey's claims,[2] the former Fifth Circuit Court of Appeals held that the facts found by the district court constituted a finding of class-wide discrimination justifying relief to the individual class members. *Davis v. Board of School Commissioners of Mobile County,* 600 F.2d 470 (5th Cir.1979), *modified,* 616 F.2d 893 (5th Cir.1980).

After the second remand, the district court certified the class with Foster and Buskey as the named representatives, and severed the action from the original *Davis* case. Since class-wide discrimination had been established in Stage I of the litigation, the district court entered an order permitting the filing of claims by members of the subclass of principals[3] in Stage II proceedings asserting individual charges of discrimination by the school board. The order provided for the submission of defenses, if any, to the claims asserted by the plaintiffs. The contested claims were referred to a magistrate as a special master for recommendation. The order further stated:

Any principal subclass member shall have the right, pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, to retain and appear through counsel of his own choosing. Subclass members who do not retain separate counsel and who do not wish to represent themselves shall continue to be represented by attorneys for the plaintiffs and plaintiff class.

*Foster v. Board of School Commissioners of Mobile County,* No. 86–7064 (D.Ala.

---

1. *See Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1046 n. 1 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) for the many citations to this perennial litigation.

2. The first appeal involved the district court's dismissal of Buskey's class action suit with leave to intervene in the suit brought by the *Birdie Mae Davis* class as well as other procedural issues. *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir.1975),

cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

3. After certifying the case as a class action, the district court created two subclasses of black professionals, one subclass consisting of blacks denied promotion to a principalship and another subclass consisting of blacks denied promotion to central office positions. Only the claims of the subclass of blacks denied principalships were found ripe for Stage II proceedings.

Aug. 3, 1981) (order certifying class). The district court also awarded the plaintiffs attorney's fees of $20,910.00 plus expenses of $1,898.00 as prevailing parties in the Stage I proceedings establishing class-wide discrimination.

During Stage II of the class action, the special master held 104 hearings for the individual plaintiffs. The firm originally filing the suit, Blacksher, Menefee & Stein, P.A., represented the class members.[4] The special master recommended that twenty-eight of the plaintiffs receive individual injunctive and monetary relief totaling more than $2,000,000.00. Afterwards, a hearing was held on the issue of attorney's fees and the magistrate entered an exhaustive recommendation following the analysis mandated by the decision of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).[5] After determining the "lodestar" figure by multiplying the reasonable hours expended by the reasonable hourly rate, the special master recommended a 30% enhancement based on the contingent nature of the case.

The Special Master also addressed the "results obtained" factor of the *Johnson* analysis under the principles set out by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Finding that the limited success achieved by the plaintiffs in the Stage II proceedings did not justify a full fee award, the special master calculated a reduction for time spent on unsuccessful claims of approximately 12%. The rationale for this reduction is carefully set out in the recommendation. It was noted that most of the

attorney hours were spent on general research and investigation applicable to all the claims and that evidence adduced at hearings on unsuccessful claims contributed to the cases presented by victorious claimants. Therefore, the special master calculated that no more than 250 hours expended by the attorneys were unrelated to the overall success achieved by the plaintiffs. Accordingly, the magistrate recommended a reduction in the plaintiffs' attorney's fees award of 250/2053 with 2053 comprising the total hours reasonably expended by the plaintiffs' counsel in Stage II of the suit. The district court adopted the recommendation of the special master with one minor exception, awarding relief to one class member found unqualified by the magistrate.

On appeal, the sole issue is whether the district court abused its discretion in adopting the special master's recommendation of the reduction in plaintiffs' attorney's fees to reflect the limited number of class members who obtained individual relief in Stage II. The appellant, the Board of School Commissioners of Mobile County ("Board"), contends that the method used by the magistrate in calculating the reduction did not bear any relationship to the actual degree of success obtained by the plaintiffs. The defendants urge that the attorney fees award should be reduced by the number of unsuccessful claims over the total number of claims.

■■■ This argument is expressly refuted by relevant Supreme Court authority. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court discussed in detail the district court's exercise of its discretion in adjusting the lode-

---

**4.** The named partners of this firm, James U. Blacksher, Larry T. Menefee, and Gregory B. Stein appeared for most of the 104 plaintiffs. The firm also associated two other attorneys, Christopher Clanton and Janice Spears, to aid in presenting the claims of the class members.

**5.** In *Johnson,* the court set out twelve factors to be considered in awarding reasonable attorney's fees to a prevailing party. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service prop-

erly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

star amount according to the "results obtained" factor. The Court observed that this is a particularly crucial concern "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* at 434, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. After noting situations when an adjustment to the lodestar may be appropriate, the Court outlined a method for accomplishing the reduction emphasizing that "the most critical factor is the degree of success obtained." *Id.* at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. The Court distinguished between claims different in all respects from the plaintiff's successful claims, which should be excluded in considering the amount of a reasonable fee, and related claims, some of which were wholly or partially unsuccessful. In a case involving related claims where the overall results are excellent, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. Where a plaintiff achieved only limited success on related claims, however, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Id.* at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 51–52. In determining what is reasonable, the Court stated:

> We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' [Citations omitted.] Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.

*Id.* at 435–36 n. 11, 103 S.Ct. at 1940–41 n. 11, 76 L.Ed.2d at 52 n. 11. Thus, the Board's argument is without merit. Similarly, the Board's contention that the failure of the plaintiffs' attorneys to keep adequate time records justified a further reduction of the fee award is refuted by the special master's specific findings of fact regarding the allocation of time between successful and unsuccessful claims. These findings are not clearly erroneous. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

On cross-appeal, the plaintiffs urge that the district court erred in allowing any reduction of attorney fees due to the limited number of claimants who recovered in the Stage II proceedings. The plaintiffs maintain that the district court misunderstood the function of a bifurcated employment discrimination suit. Once the class established discrimination at the end of Stage I and received general injunctive relief, they were the prevailing parties and entitled to fees for all reasonable time expended in Stage II. The plaintiffs claim that the special master's recommendation at the close of the Stage II proceedings, in effect, applied a second prevailing party test to a suit already determined to be a plaintiff's victory. According to this argument even the plaintiffs who did not obtain individual favorable judgments in Stage II prevailed in obtaining class-wide injunctive relief in Stage I.

First, we note that the class has already received attorney's fees for their success in Stage I. Secondly, the plaintiffs misunderstand the nature of the "results obtained" analysis. The determination that a plaintiff is the "prevailing party" merely brings him "across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. Thus, the district court's reduction for the limited success obtained by the plaintiffs did not require a second prevailing party determination. Rather, the district court correctly followed the language of the attorney's fees statutes and Supreme Court in setting a "reasonable" fee for the prevailing party by making it "clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53.

The plaintiffs next assert that since the Stage II proceedings are merely the means by which the individual class members obtained the fruits of the Stage I judgment against the defendants, the proceedings

may be likened to post-judgment enforcement measures. In *Turner v. Orr*, 785 F.2d 1498 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986), the court held that attorney's fees arising out of the plaintiffs' monitoring committee's post-judgment efforts at enforcing a consent decree entered in a class action arising under Title VII were properly chargeable to the defendants. *Id.* at 1504. Although many of the individual post-judgment efforts were unsuccessful, the measures were necessary to enforce the judgment and could not be severed from matters upon which the plaintiffs prevailed in obtaining the judgment. *Id.* at 1503. Although the plaintiffs acknowledge that the *Turner* decision rested in large part upon the language of the consent decree, they contend that the case still supports their position that success in Stage I of the litigation guarantees that all necessary enforcement steps, such as the individual Stage II hearings, are properly charged as costs of the prevailing party whether successful or not.

The plaintiffs also point out that the district court's Stage II order required the class attorneys to continue to represent the individual members who did not elect to choose their own attorneys or represent themselves. The court order, according to the plaintiffs, laid a legal and ethical obligation upon them to represent the class members and therefore the award should fully compensate the plaintiffs for all attorney time spent in reasonable response to the court order. *Adams v. Mathis*, 752 F.2d 553 (11th Cir.1985).

While this argument is appealing, we find it unpersuasive under the particular facts of this case. In *Adams*, we indicated that results, although not the controlling criteria, remain an important factor in setting an attorney's fees award even where a lawyer performs a specific task at the request of the court. *Id.* at 554. Furthermore, the rationale advanced by the plaintiffs for reversal of the reduction is inconsistent with the special master's analysis under another *Johnson* factor. The plaintiffs assert that their success in Stage I of this litigation (for which they were fully compensated), as well as the district court order designating the class attorneys as counsel for the individual class member, in effect, guaranteed the plaintiffs recovery for attorney time expended in presenting the Stage II claims. And yet, the special master allowed the plaintiffs a 30% contingency fee enhancement, which is unchallenged on this appeal, because recovery of their attorney's fees was uncertain.[6] The plaintiffs can not have it both ways. In short, we are mindful of the Supreme Court's admonition that the district court has discretion in determining the amount of a fee award. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53. The recommendation of the special master, adopted by the district court in this case, provides a clear explanation of the reasons for the attorney's fees award in light of the considerations expounded by the Supreme Court and this circuit. No clear abuse of discretion is apparent. *Odum v. Clark*, 748 F.2d 1538, 1541 (11th Cir.1984). Accordingly, the judgment of the district court is

AFFIRMED.

---

6. We note that the imposition of a contingency enhancement to the lodestar figure has been called into question by the Supreme Court and expressly reserved for reargument. *Pennsylvania v. Delaware Valley Citizens Council,* —— U.S. ——, —— - ——, 106 S.Ct. 3088, 3099–3100, 92 L.Ed.2d 439, 458 (1986). Our own court is soon to address this issue in en banc reconsideration of *Lattimore v. Oman Construction,* 795 F.2d 930 (11th Cir.1986). This aspect of the magistrate's recommendation, however, was never mentioned on this appeal; therefore, this issue is deemed abandoned. *Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).