**Johnnie GILBERT, Horace Walters, Andrew Lockhart and Billy O'Donald, Plaintiffs,**

v.

**CITY OF LITTLE ROCK, ARKANSAS; the Civil Service Commission of the City of Little Rock, Arkansas; Walter E. "Sonny" Simpson, Individually and in his Official Capacity as Chief of Police of the City of Little Rock, Arkansas; and Carlton E. McMullen, Individually and in his Official Capacity as City Manager of the City of Little Rock, Arkansas, Defendants.**

No. LR–C–78–340.

United States District Court, E.D. Arkansas, W.D.

Aug. 4, 1987.

Phillip J. Duncan, Thomas M. Bramhall, Ralph C. Olm, Little Rock, Ark., for plaintiffs.

Ed Adcock, City Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

Pending before the Court is plaintiffs' Petition for Attorney's Fees and Costs pur-

suant to 42 U.S.C. § 1988, to which defendants have fully responded. Also before the Court is the issue of the amount of back pay to which one plaintiff, Horace Walters, is entitled, the parties having stipulated to the amounts which plaintiffs Johnnie Gilbert, Billy O'Donald, and Andrew Lockhart should receive.

## I. *Horace Walters' Back Pay*

On August 28, 1986, 799 F.2d 1210, the United States Court of Appeals for the Eighth Circuit filed its Opinion in this cause (*Gilbert II*) in which it directed, *inter alia,* that plaintiffs Gilbert, O'Donald, Lockhart, and Walters be given permanent promotions to sergeant as soon as positions are available, and that they be compensated for lost wages and benefits from the dates they would have been promoted absent discrimination until they actually were promoted.[1] As noted previously, the parties stipulated to the relief to which Gilbert, O'Donald and Lockhart were entitled. From the pleadings recently filed, it appears that the Court need only address the issue of back pay for plaintiff Walters.

■ Walters was actually promoted to sergeant in 1980, not long after the date the Eighth Circuit found he would have been promoted had he not been discriminated against on account of his race. For that reason, he received a higher salary than Gilbert, O'Donald, and Lockhart during the several years that followed. On account of this, defendants contend that Walters is entitled to less back pay than the others, by their figures $331.73. On the other hand, Walters asserts that he is entitled to $9,324.95. Walters claims that he should have been promoted to lieutenant in October of 1981, rather than October of 1983, the actual date he became a lieutenant, and that he should receive back pay for that deprivation, as well. The disparity between plaintiffs' and defendants' back pay figures primarily stems from their difference of opinion as to when Walters should have been made lieutenant.

Although determined to make Walters whole for the injuries he suffered at the hands of defendants, the Court cannot say with certainty that he would have been promoted to lieutenant in October of 1981 but for the unlawful discrimination. Clearly, the Court cannot award any relief, back pay or otherwise, on such a speculative basis. Accordingly, the Court finds that Horace Walters is entitled to back pay from defendants in the amount of $331.73, representing the salary he was denied by virtue of the delay of his promotion to sergeant. Inasmuch as the other types of relief mandated by the Eighth Circuit have not been addressed by the parties in their pleadings and memoranda, the Court assumes that those matters have been disposed of through stipulation.

## II. *Attorney's Fees and Costs*

Defendants concede that, for the purposes of the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, plaintiffs are "prevailing parties" herein and are entitled to an award of reasonable attorney's fees and costs. That given, this Court need only determine what amount of fees and costs will be "reasonable" under the circumstances of this case, as guided by the pronouncements of the United States Supreme Court and the Eighth Circuit Court of Appeals on the subject.

### A. *Attorney's Fees*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983); *see also Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("product of reasonable hours times a reasonable rate normally provides a reasonable attorney's fee within the meaning

---

1. The mandate from the Eighth Circuit was received by this Court on November 10, 1986. After several extensions of time for each side to prepare its pleadings and briefs, this matter became ripe for consideration on May 26, 1987.

However, additional briefs were received in response to the United States Supreme Court's decision in *Crawford Fitting Company v. J.T. Gibbons, Inc., infra.*

of the statute"). This computation yields what is known as the "lodestar" amount. Although this formula provides a sound basis for computing an estimate of the fee a lawyer should receive in any particular case, it "does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart, supra,* 461 U.S. at 434, 103 S.Ct. at 1940. Other factors which should be considered in determining the propriety of fee enhancement or reduction are set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[2]

Plaintiffs, through the affidavits of their counsel, request attorney's fees for the hours reflected below at the claimed hourly rates, as follows:

| Attorney | Hours Expended | Hourly Rate | Lodestar Fee |
|---|---|---|---|
| Phillip J. Duncan | 1,662.69 | $125.00 | $207,836.25 |
| Thomas M. Bramhall | 153.75 | $125.00 | 19,218.75 |
| Ralph C. Ohm | 354.94 | $65.00 | 23,071.10 |
| Ralph C. Ohm (law clerk) | 239.50 | $25.00 | 5,987.50 |
| TOTAL | | | $256,113.60 |

In addition, plaintiffs have asked the Court to enhance the amount of the requested fees on account of, among other things, the quality of representation, the complexity of the issues, and the risk of receiving no fee at all.

With but a few exceptions, defendants contend that the hours claimed to have been expended and the hourly rate of pay requested by plaintiffs' counsel are unreasonable and excessive. The Court will address the merits of the petition as it relates to each attorney individually.

### 1. Thomas M. Bramhall

Regarding the request for Mr. Bramhall, defendants concede the reasonableness of the 153.75 hours he claims to have expended on this case; however, they challenge the $125.00 hourly rate requested for him. In support of the request, plaintiffs have attached affidavits from several members of the local bar attesting to the considerable ability and experience of Mr. Bramhall as a trial attorney.

 Mr. Bramhall devoted approximately four weeks time to preparation and presentation of this case on retrial. Plaintiffs ultimately prevailed on most of the issues litigated during his participation. The Court acknowledges his experience and competence as an attorney. Based upon the arguments of counsel and the affidavits in support thereof, the Court finds that Mr. Bramhall should be compensated at the rate of $110.00 per hour for his services rendered to plaintiffs herein. That figure is consistent with prevailing rates in the Little Rock area for experienced counsel in difficult civil rights cases. Due to his relatively brief involvement in this matter, the Court is of the opinion that no enhancement of Mr. Bramhall's fee is warranted. Nor is any reduction appropriate on account of the success ultimately obtained. Accordingly, an attorney's fee in the amount of $16,912.50 is awarded for Mr. Bramhall.

### 2. Ralph C. Ohm

 Defendants object not only to the number of hours expended by Mr. Ohm, but also to the $65.00 hourly rate requested for his attorney services. The Court finds no merit in most of defendants' contentions

---

**2.** Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and abilities of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.,* at 717–719.

with respect to Mr. Ohm's representation. However, the Court agrees that the number of attorney hours claimed should be slightly reduced due to duplication of the efforts of Messrs. Bramhall and Duncan. Mr. Ohm shall be compensated for 300 hours at the rate of $65.00 per hour for his attorney time, as well as for all claimed law clerk time at the rate of $25.00 per hour. Accordingly, the Court finds that for his efforts on behalf of plaintiff, a reasonable fee for Mr. Ohm is $19,500.00 for services as attorney and $5,987.50 for services as law clerk, or a total lodestar of $25,487.50. The Court further finds that the attorney's fee portion of the lodestar should be adjusted. Reduction of that figure by 15% is warranted due to plaintiffs' failure to completely prevail. Only four of the thirteen original plaintiffs in this cause were granted relief, and a number of plaintiffs' claims were found to lack merit. However, an enhancement of 15% is appropriate on account of the undesirability of this case, the difficulty of the questions presented, the time and labor required, the length of the professional relationship with plaintiffs, and the contingent nature of the fee. Thus, the adjusted attorney's fee award for Mr. Ohm's services is $19,061.25. The total award for his services shall be $25,048.75.

### 3. Phillip J. Duncan

■ The major point of contention between the parties with regard to attorney's fees concerns the fee requested for Mr. Duncan—$207,836.25. Defendant contends that both the $125.00 hourly rate requested and the 1,662.69 hours expended are grossly excessive and unreasonable.

After carefully reviewing Mr. Duncan's detailed record of his time expended on this case, the Court feels compelled to agree with defendants that the number of hours claimed is excessive. The time record reflects entries for "research" or "study case law" on well over a hundred days during his work on this case. Although it is indeed reasonable for an attorney to engage in a certain amount of research in preparing a case for trial, the Court finds that it would be inequitable to require defendants to compensate Mr. Duncan for all of his research time. Considering the circumstances of this case and the time and effort required to fully present plaintiffs' claims, the Court finds that the number of hours which Mr. Duncan should have reasonably expended on this case is 1,330, or roughly 80 per cent of what has been claimed.

■ Defendants contend that Mr. Duncan should be compensated at the rate of $90.00 per hour, rather than $125.00, as requested, for his professional services rendered herein. Based on the affidavits of other local counsel, as well as the pleadings and memoranda of the parties, the Court finds that a rate of compensation for Mr. Duncan of $110.00 per hour for all time reasonably expended from 1980 to the present is both reasonable and fair. The product of Mr. Duncan's allowed hours times the approved hourly rate yields a lodestar of $146,300.00. Using the reduction and enhancement percentages set out previously with respect to the fee for Mr. Ohm, the Court finds that plaintiffs should be awarded $143,008.25 in attorney's fees for the services of Mr. Duncan. Total attorney's fees (including law clerk compensation) in the amount of $184,969.50 are hereby awarded.

### B. *Costs*

Plaintiffs request that they be awarded costs from defendants in the total amount of $103,534.01, consisting of transcript and deposition costs, other out-of-pocket expenses, and expert witness fees. Defendants argue, for a number of reasons, that they should be compelled to pay only a fraction of those costs. The Court will address each element of these costs separately.

### 1. Transcript and Deposition Costs

Defendants have, "in the interest of fairness," stipulated that plaintiffs should be reimbursed all of the $3,302.35 they have requested for transcript and deposition costs. That sum is hereby awarded to plaintiffs from defendants.

## 2. Out–of–Pocket Expenses

Plaintiffs seek reimbursement for a miscellany of expenses in the aggregate amount of $6,284.97. Defendants concede the fairness and reasonableness of $3,960.24 of such expenses, but dispute the remainder.

 Defendants' primary objection in this area concerns plaintiffs' request for reimbursement of air fare, hotels and meals, printing expenses and express mail costs incurred while this case was before the Eighth Circuit on appeal. After reviewing the cost statement and the arguments of counsel, the Court finds that defendants' contentions have merit. In an order dated February 5, 1987, the Eighth Circuit declined to reconsider its previous denial of plaintiffs' petition seeking additional costs. In that order, the Eighth Circuit stated "[i]t was the intent of this Court in our December 31, 1986 order to award the appellants $30,679 in attorneys' fees and $915.87 in costs for all services rendered with respect to all appeals to this Court. The Court now adheres to that ruling." The Eighth Circuit having awarded plaintiffs what it determined to be a fair amount for expenses incurred on appeal, it would be inappropriate for this Court to look beyond that award. Accordingly, plaintiffs are hereby awarded their district court level out-of-pocket expenses from defendants in the amount of $3,960.24.

## 3. Expert Witness Fees

By far the largest component of plaintiffs' statement of costs is the request for expert witness fees and expenses, which totals $93,946.69. Plaintiffs make this request pursuant to 28 U.S.C. § 1920 and Rule 54 of the Federal Rules of Civil Procedure, as well as 42 U.S.C. § 1988. Defendants contend that the request is grossly excessive and argue that plaintiffs should receive far less remuneration for these expenses.

Until recently, the Court would have been inclined to award plaintiffs the lion's share of the expert witness fees requested. However, this issue has been made more difficult by the United States Supreme Court's holding that "... absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the [$30–per–day] limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Although the concurring and dissenting opinions in *Crawford Fitting* recite the understanding that the holding does not reach the question of whether a district court may award fees for an expert witness under 42 U.S.C. § 1988, the majority declined the opportunity to so limit their decision.

Reimbursement of prevailing parties for the fees of expert witnesses has often been approved, in some cases under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d), *see e.g., Wilmington v. J.I. Case Co.*, 793 F.2d 909 (8th Cir.1986); *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201 (3rd Cir.1981), while in others pursuant to 42 U.S.C. § 1988, *see e.g., Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983); *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.1981) (overruled by *International Woodworkers of America v. Champion International Corporation*, 790 F.2d 1174 (5th Cir.1986) (en banc), *aff'd.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).[3] Although not expressly disallowing the practice, some courts have ruled that it is not an abuse of discretion for a district court to decline to award compensation for expert witness fees to a prevailing party. *E.g., Davis v. Richmond, Fredericksburg & Potomac R. Co.*, 803 F.2d 1322 (4th Cir.1986); *Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3rd Cir.1980).

The Eighth Circuit Court of Appeals has consistently approved awards for expert witness fees to prevailing parties. *E.g., Wilmington v. J.I. Case Co., supra; Nemmers v. City of Dubuque*, 764 F.2d 502 (8th

---

**3.** This case was consolidated on appeal by the United States Supreme Court with *Crawford Fit-* *ting.*

Cir.1985); *Paschall v. Kansas City Star Co.,* 695 F.2d 322 (8th Cir.1982), *vacated on other grounds,* 727 F.2d 692 (8th Cir.1984). In *Paschall,* the Eighth Circuit adopted the approach of the Third Circuit set out in *Roberts v. S.S. Kyriakoula D. Lemos, supra,* and followed the developing trend of allowing recovery of "expert witness fees when the expert's testimony was crucial to the resolution of the case." 695 F.2d at 338. In choosing that course, the Eighth Circuit cited *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), noting that in that case "the Supreme Court indicated that Fed.R. Civ.P. 54 authorizes district judges to award costs not specifically enumerated in 28 U.S.C. § 1821." *Id.*

In determining that expert witness fees were recoverable under 28 U.S.C. §§ 1821 and 1920 and Federal Rule of Civil Procedure 54(d), it appears that both the Eighth Circuit and the Third Circuit relied heavily on the statement in *Farmer v. Arabian American Oil Co.* that "[T]he discretion given district judges [by Rule 54(d) ] to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." 379 U.S. at 235, 85 S.Ct. at 416. In *Crawford Fitting,* however, that statement and the notion that it authorizes an award of costs outside those specified in § 1821 and § 1920 were expressly disapproved.

In light of *Crawford Fitting,* this Court is convinced that it can tax as costs expert witness fees in excess of the $30–per–day limit of § 1821 only where expressly authorized by statute or agreement. Congress has indeed shown a willingness to explicitly provide for their recovery, for "[a]t least twenty-eight statutes provide for the taxing of expert witness' fees as costs in civil actions, albeit under varying standards...." *International Woodworkers of America, supra,* 790 F.2d at 1179 n. 7. As an example, section 307(f) of the Clean Air Act, 42 U.S.C. § 7607(f)(1982), provides:

In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

But, for whatever reason, Congress chose not to expressly provide in 42 U.S.C. § 1988 for the recovery of expert witness fees in civil rights cases. As noted by Circuit Judge Godbold in his dissenting opinion in the civil rights case of *Jones v. Diamond, supra,* 636 F.2d at 1391:

No Act of Congress is cited as authority for this proposition [that plaintiffs may recover expert witness fees]; indeed, there is none. Instead, the majority opinion relies on a Senate Report concerning legislation which could have contained such a provision, but *did* not.

There simply is no explicit statutory authority which would allow this Court to award plaintiffs expert witness fees in excess of $30 per day. Accordingly, plaintiffs shall be recompensed for their expert witness fees in the following amounts:

| | |
|---|---|
| James L. Outtz | $330.00 |
| E. Lee Hoffman | 480.00 |
| Rawleigh H. Rawls | 90.00 |
| Total | $900.00 |

The Court is not unmindful of the burden that this finding places on civil rights plaintiffs, not only in the instant case, but in others, as well. However, this Court is constrained to follow the pronouncements of the United States Supreme Court. That constraint mandates the result reached herein.

In summary, the Court finds that plaintiffs shall receive from defendants total attorney's fees in the amount of $184,969.50, and total costs of $8,162.59.[4] Judgment shall be entered in accordance with this Opinion.

---

**4.** The attorney's fees figure set out herein does not include sums paid by defendants to Messrs. John Walker and Emmanuel Pruitt pursuant to

stipulation for attorney services on behalf of plaintiffs earlier in the case.