See also 88 B.R. 146, 91 B.R. 775.

## In re WRIGHT AIR LINES, INC., Debtor.

### Bankruptcy No. B84–02493(B).

United States Bankruptcy Court, N.D. Ohio, E.D.

Nov. 3, 1992.

Richard A. Baumgart, Trustee, Cleveland, Ohio, for Trustee, Atty. for Creditor's Committee.

Thomas C. Pavlik, Cleveland, Ohio, for debtor.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this matter the Chapter 7 case Trustee's attorney (Applicant) seeks final compensation and a reimbursement for services rendered to the bankruptcy estate of

Wright Air Lines, Inc. (Debtor). By way of chronology, the Debtor's case was initially filed as a Chapter 11 case in 1984. Subsequently, it was converted to liquidation proceedings under Chapter 7. 51 B.R. 96. Later on, it was reconverted to reorganization proceedings under Chapter 11, before it ultimately was reconverted for liquidation under Chapter 7.

The application has been examined pursuant to provisions of § 330 of the Bankruptcy Code [11 U.S.C. 330] and of Rule 2016, Bankr.R. Initially, the Court will address the underlying application for compensation for professional services rendered by the Applicant. The services charged to the Debtor's estate were generally set forth in sufficient detail to allow the Court to determine the relative value to the Debtor's estate. Further, the invoiced services were, for the most part, actually rendered, were necessary and beneficial to the Debtor's estate. Certain changes, however, were either insufficiently described or were duplicative of duties which are statutorily imposed upon the case trustee. Where such occurred, no award of compensation was allowed. The Applicant invoiced the Debtor's estate a total of 587.50 hours, at an average hourly rate of $135.60, for a total request of $82,919.50. These duplicated efforts totalled 26.6 hours, reducing the fee request of $82,-919.50 by an amount of $4,575.20, for a net compensation award of $78,344.30.

In addition to its request for compensation for services rendered, the Applicant seeks a fee enhancement based upon the complexity and difficulties of the matters encountered during the administration of the case. The amount of $25,000.00 is sought as a fee enhancement. The U.S. Trustee offered comment to the effect that such a premium should be disallowed as the Applicant achieved results which he was hired to accomplish. In support of his premium request, the Applicant asserts several factors for the Court's consideration, inclusive of the following: (1) He and his law firm obtained exceptional results in

view of the particular difficulties involved with the case; (2) Their efforts were complicated as no officer or director of the Debtor cooperated with the appointed trustee due to the existence of potential SEC violations and an ongoing SEC investigation; (3) the Debtor's voluminous records were literally thrown into a room in disarray, requiring an inordinate amount of time to sort and analyze same without the benefit of any assistance from the Debtor's officers or directors having familiarity with the Debtor's operations; (4) Upon the initial conversion of the case from Chapter 11 to Chapter 7, with a belief that all assets were encumbered, there were no apparent assets upon which the estate could generate a dividend to general unsecured creditors; (5) Through the Applicant's initiative, the case was reconverted to Chapter 11 proceedings to permit the Trustee to operate the Debtor's business for approximately six months in order to facilitate a sale which netted a $200,000.00 benefit to the Debtor's estate; (6) The defense of some 700 claims against the Debtor's estate resulted in a substantial reduction in the amounts of wage priority claims and general unsecured claims, without the need to retain an outside claims processor resulting in a further savings; (7) and finally, the pursuit of preferential transfers, involving some 140 adversary proceedings, resolved without trials, generated an estate in excess of $3 Million which will allow a substantial dividend to unsecured creditors where none was anticipated early on.

The present application for fees is a final request, with two earlier requests having been considered and awarded. In consideration of the present fee request for professional compensation, a lodestar approach was utilized to determine the reasonableness of the fees sought.[1] As indicated above, a total of 587.50 hours were invoiced during the subject application period, at an average hourly rate of $135.60. The basic fee awarded herein is also reflective of other factors considered by the Court such as (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)

---

1. Under the lodestar method, the total number of hours reasonably expended by the applicant is multiplied by a reasonable hourly rate to arrive at a fee award.

the skill required to perform the legal service properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee was fixed or contingent; (7) time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). In so doing, the average hourly rate and the total hours expended are reasonable in view of the standards of § 330 of the Bankruptcy Code.

■ From this premise, the Applicant's request for a premium is considered. In addressing fee enhancement issues in non-bankruptcy fee shifting cases, the U.S. Supreme Court held that fee enhancements could not be based on the complexity, novelty, special skill, experience, quality, or the results obtained, as those factors presumably were accounted for in determining the reasonableness of the rate and time components considered in the lodestar computation. *Blum v. Stetson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In a later fee-shifting decision, however, the Supreme Court acknowledged certain instances in which a fee enhancement could be considered notwithstanding the use of a lodestar approach. (Where appropriately justified in exceptional cases, the Supreme Court suggests the additional amount should not exceed one-third of the lodestar.) *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 730, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585, 601 (1987); *See also, American Bankruptcy Institute National Report on Professional Compensation In Bankruptcy Cases,* May, 1991. LRP Publications. The Supreme Court has not addressed the issue of awarding fee enhancements in bankruptcy matters.

■ Fee enhancements are rarely sought and are rarely granted. *Id.* at 150.

Considering the history and applying the aforementioned factors to this case, however, the award of a premium is justified. In a word, the professional services rendered by the Applicant were "extraordinary". Herein, not only was the Trustee enabled through the Applicant's efforts to generate a distributive estate, this occurred under exceptional circumstances. Through the Applicant's efforts, the Debtor's earlier Chapter 7 case was reconverted to Chapter 11 in order to generate a dividend from what initially was perceived as a "no-asset" case in which general unsecured creditors would receive no distribution. In doing so, the Applicant received no assistance from the Debtor's officers and directors. These extraordinary efforts resulted in the creation of an estate with assets in excess of $3 Million which now affords a dividend to the general unsecured creditors. Where general unsecured creditors will not receive a dividend from a debtor's estate, a fee enhancement is unjustified, even where the applicant's services rendered were exceptional in nature. This, however, did not occur in the present case. Not only did the Applicant's efforts create a dividend for such creditors, the dividend created is of a respectable amount. A premium award of $20,000.00 is both reasonable and justifiable and is well within the suggested maximum (no more than 30% of lodestar) suggested by the U.S. Supreme Court in *Delaware Valley, supra. See also, Grant v. G. Schumann Tire & Battery Co.,* 908 F.2d 874, 880 (11th Cir.1990) (Lodestar rates may be enhanced based on risk of nonrecovery, excellent or exceptional results, or delay in receipt of payment.); *In re White Motor Credit Corp.,* 50 B.R. 885 (Bankr. N.D.Ohio 1985). The award of fee premiums are discretionary with the bankruptcy court. *See, Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1257 (5th Cir.1986).

Accordingly, in addition to the final compensation award of $78,344.30, an amount of $20,000.00 is awarded as a premium for an exceptional quality of services rendered. Expense reimbursement sought in an

amount of $2,661.43 is hereby approved, for a total award of $101,005.73.

IT IS SO ORDERED.